## HAYES WHEEL CO. v. MICHELIN et al.

(Circuit Court of Appeals, Sixth Circuit. July 12, 1926.)

No. 4292.

**1. Patents ⬤�ー328.**

Michelin patent, No. 927,266, for automobile wheel with fixed rim, demountable rim, and spring clamps, *held* not infringed.

**2. Patents ⬤➠237.**

An incidental and trifling action cannot satisfy the call for a primary and characterizing function.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Patent infringement suit by Andre J. Michelin and others against the Hayes Wheel Company. Decree for plaintiffs (300 F. 458), and defendant appeals. Reversed and remanded, with instructions.

Fred L. Chappell, of Kalamazoo, Mich., and Melville Church, of Washington, D. C. (C. B. Des Jardins, of Washington, D. C., and Justin R. Whiting, of Jackson, Mich., on the brief), for appellant.

William J. Belknap, of Detroit, Mich., for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. This is an infringement suit, based upon patent No. 927,-266, issued July 6, 1909, to Andre J. Michelin. Its several claims in suit pertain to the assembly, in an automobile wheel, of a fixed rim, having upon its inner edge a tapering flange, which serves as an abutment for the demountable rim, the demountable rim itself, and spring clamps fastened by bolts and nuts to the face of the fixed rim, and having upwardly extending arms which grip the outer side of the demountable rim. Inasmuch as we think the case is controlled by the question whether defendants' clamping means are the equivalent of the patentee's spring clamps, and a full discussion would be of no benefit in other cases, we confine ourselves to a brief statement of conclusions, with reasons which can be understood by the parties and counsel.

[1, 2] Clearly there was nothing new about the patented construction, unless as novelty was imparted by the spring clamps, that were substituted for the screw-driven wedges of the older art. It has been in some of the discussions assumed that these spring clamps permitted a radial resiliency as between the demountable rim and the fixed rim. This thought is not supported by the specification and drawings. In all three figures the space between the permanent and demountable rims is closed at each clamp location, by some form of device, to prevent any substantial radial motion, and the demountable rim in place is shown in contact with those blocking devices. Further than that, it is obvious that the spring clamps of the drawing

would not permit anything more than negligible radial motion. On the contrary, the resiliency which is contemplated and permitted by these spring clamps is upon a lateral line parallel to the wheel axle. As the clamps are driven home, the demountable rim moves upon this horizontal line, and the spring grip finally taken by the upper end of the clamps exerts its force in this same line, while the lower end of the clamp exerts a correlative outward spring pressure against the bolt nut and acts as a nut lock.

The plaintiff's clamp has a relatively long and thin arm extending upwardly, and, if made of spring metal, would in this part have very substantial resiliency. Its point of elastic deformation between the upper end, so pressed outwardly by the rim, and the lower end, forced inwardly by the nut, would be slightly above the bearing face of the nut, and the clamp is thin enough at this point to permit such deformation.

Defendant has no corresponding construction. Its demountable rim lug, which receives the lateral pressure from the advancing nut, is not only made of practically nonresilient material, being steel soft enough to be riveted, but it is thickest and heaviest at the critical point just above the bearing surface of the nut. While at that point there may be that theoretical elasticity which is inherent in perhaps all metals, the construction is such that there could not be substantial elastic motion, either radially or laterally. In no fair sense of the word can it be called a spring clamp.

In the court below equivalency was found because of what was termed the resilient assembly. It is doubtless true that, if the flange of the fixed rim, which acts as an abutment, and the demountable rim itself are sufficiently elastic, then, when one is clamped against the other, there will be a resulting lateral resiliency, and, in the form used by defendant, possibly some radial resiliency. This assembly quality is not contemplated by the patent. Nothing is said about it. It would depend upon the character of the rear abutment flange and of the demountable rim. There is no suggestion of constructing these so as to get that result. The statement that the spring pressure on the nut is the combination of the action of the spring clamp and the demountable rim proportionate to their elasticity, while it suggests that the rim may aid the spring clamps, does not teach that the elastic quality may be omitted from the clamps entirely, and its place be taken by the construction of the abutment flange. In brief, whatever resil-

iency of any kind there is in the patented structure must be credited substantially to the spring clamps; whatever of the same quality there is in defendant's structure is to be credited to the demountable rim and the abutment flange, with no substantial contribution from the attaching lug. Hence this lug cannot be considered the equivalent of the patented spring clamp. An incidental and trifling action cannot satisfy the call for a primary and characterizing function. Michelin practically asks us to eliminate "spring" from "spring clamps," yet it was by reliance upon this character in these clamps that he obtained his patent.

Other reasons tend to the same result, but they need not be mentioned. The decree must be reversed, and the case remanded, with instructions to dismiss the bill.